Matter of Andreija N. (Michael N.--Tiffany O.) (2022 NY Slip Op 03552)

Matter of Andreija N. (Michael N.--Tiffany O.)

2022 NY Slip Op 03552

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

531629
[*1]In the Matter of Andreija N., Alleged to be an Abused, Severely Abused, Repeatedly Abused and Neglected Child. Montgomery County Department of Social Services, Appellant; Michael N., Respondent. Tiffany O., Appellant. (And Another Related Proceeding.)

Calendar Date:April 18, 2022

Before:Garry, P.J., Egan Jr., Colangelo, Ceresia and Fisher, JJ.

Giangreco Law Group, PC, Albany (Adam G. Giangreco of counsel), for Montgomery County Department of Social Services, appellant.
Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for Tiffany O., appellant.
Michelle I. Rosien, Philmont, for respondent.
Christopher T. Savino, Schenectady, attorney for the child.

Garry, P.J.
Appeals from an order of the Family Court of Montgomery County (Meyer, J.), entered February 10, 2020, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be abused, severely abused, repeatedly abused and neglected by respondent.
Respondent and Tiffany O. (hereinafter the mother) are the parents of a child (born in 2012). In July 2018, the child told a mental health counselor who was treating her that she was afraid that respondent was going to harm the mother's boyfriend and parents and that, if respondent found out that the child had revealed this information, he would "tickle . . . [her] eyes" all night in her bed. The counselor reported this interaction to a child protective hotline in Vermont, where the mother and the child were living at the time. The child was subsequently interviewed by child protective officials in that state, but no record of that interview exists. Later that same month, two caseworkers employed by petitioner interviewed the child, and, in that interview, she described various forms of inappropriate sexual contact by respondent. As a result, petitioner commenced this proceeding alleging that respondent had abused, severely abused and repeatedly abused the child by committing sex offenses against her. The petition also alleged that respondent neglected the child by threatening to harm the mother and others, purportedly causing the child to experience fear and emotional distress. After a five-day fact-finding hearing, Family Court determined, as relevant here, that petitioner failed to meet its burden to demonstrate that respondent abused or neglected the child and, accordingly, dismissed the petition. Petitioner and the mother appeal.[FN1]
As an initial matter, we note that the mother is not a proper party to this appeal. A nonrespondent parent in a child protective proceeding has "a limited statutory role and narrow rights under Family Ct Act § 1035 (d)" related to issues of custody: to "(1) pursue temporary custody of his or her child/children during fact-finding[;] and (2) seek permanent custody during the dispositional phase" (Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d 1246, 1251 [2010]; see Matter of Daniel P. [Noheme P.], 179 AD3d 436, 438 [2020]; Matter of Kimberly RR. [Gloria RR.—Pedro RR.], 165 AD3d 1428, 1430 [2018]). It has been observed that the notice requirements of that statute "are designed to ensure that the non[]respondent parent, often the noncustodial parent, is notified of the proceedings and allowed to intervene and be heard on temporary or permanent custody" (Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d at 1251; see Matter of Jayden QQ. [Christopher RR.], 105 AD3d 1274, 1276 n 1 [2013]; Matter of Tyrone G. v Fifi N., 189 AD2d 8, 17 [1993]; Sponsor's Mem, Bill Jacket, L 1986, ch 699 at 6 [stating that the purpose of Family Ct Act § 1035 (d) is to "[e]nsure that non[]respondent parents [*2]and close relatives will be utilized more often as alternative custodians for a child rather than foster care placements"]). Family Ct Act § 1035 (d) was amended the year after its enactment to clarify the narrow role of nonrespondent parents, "limiting th[eir] participation to arguments and hearings at fact-finding insofar as they affect the temporary custody of the child and to all phases of a dispositional hearing" (Letter from Sponsor, Bill Jacket, L 1987, ch 443 at 6). Thus, the role of a nonrespondent parent in a Family Ct Act article 10 proceeding has been carefully circumscribed, and the scope of a nonrespondent parent's participation on appeal in such a proceeding is therefore similarly narrow (see e.g. Matter of Kimberly RR. [Gloria RR.—Pedro RR.], 165 AD3d at 1429-1430; Matter of Eric W. [Tyisha W.], 110 AD3d 1000, 1001 [2013]; Matter of Telsa Z. [Rickey Z.—Denise Z.], 71 AD3d at 1250). There is no question that the mother has an interest in the child's welfare, nor that issues determined in the course of an article 10 proceeding can affect the outcome of other custody determinations. However, allowing her to participate with full party status — essentially echoing and bolstering petitioner's arguments — would significantly expand the intended role of a nonrespondent parent in this type of proceeding. Accordingly, as the arguments advanced by the mother do not directly pertain to a custody determination made within this proceeding, her appeal must be dismissed.
"To establish neglect, a petitioner must prove by a preponderance of the evidence that a child's physical, mental or emotional condition was harmed or is in imminent danger of harm as a result of a failure on the part of the parent to exercise a minimum degree of care" (Matter of Lydia DD. [Khalil P.], 110 AD3d 1399, 1400 [2013] [internal quotation marks, brackets and citations omitted]; see Family Ct Act § 1012 [f] [i]; Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]). "This prerequisite to a finding of neglect ensures that the Family Court, in deciding whether to authorize state intervention, will focus on serious harm or potential harm to the child, not just on what might be deemed undesirable parental behavior" (Nicholson v Scoppetta, 3 NY3d at 369).
Petitioner asserts that neglect should have been found here "as a matter of law" on the basis that respondent committed "other acts of a similarly serious nature requiring the aid of the court" (Family Ct Act § 1012 [f] [i] [b]). We disagree. At the fact-finding hearing, the mother testified as to statements and behaviors indicating that the child was afraid and distressed due to threatening conduct by respondent, but Family Court declined to credit her testimony in light of the parents' contentious history and noted the absence of corroborating evidence or testimony connecting the child's alleged behavior with any statements by respondent. Although Family Court characterized certain statements made by respondent as "[*3]totally inappropriate, uncalled for and childish," it determined that there was no evidence that his conduct caused harm beyond momentary emotional upset or otherwise rose to the level of neglect. We concur with Family Court's characterization of respondent's highly inappropriate and troubling behavior. However, "[a]ccording great deference to Family Court's factual findings, which will only be disturbed if they lack a sound and substantial basis in the record" (Matter of Christian F., 42 AD3d 716, 717 [2007] [internal quotation marks, brackets and citations omitted]), we agree with Family Court that petitioner failed to meet its burden of demonstrating that respondent neglected the child (see Matter of Josiah P. [Peggy P.], 197 AD3d 1365, 1370 [2021]; Matter of Anthony PP., 291 AD2d 687, 688 [2002]).[FN2]
Petitioner further sets forth several arguments regarding Family Court's discretionary evidentiary rulings, which it contends were so replete with errors as to have deprived petitioner of a fair trial. "It is well settled that [Family C]ourt . . . is vested with broad discretion in determining the parameters for proof to be accepted at the hearing" (Matter of Jase M. [Holly N.], 190 AD3d 1238, 1242 [2021] [internal quotation marks and citations omitted], lvs denied 37 NY3d 901 [2021]). Although petitioner ultimately moved to conform the pleadings to the proof at the conclusion of fact-finding, it repeatedly declined to move to amend its petition prior to the close of proof; it was not error for Family Court to exclude evidence during the hearing that was presented to prove conduct not alleged in the petition (see Matter of Elijah NN., 66 AD3d 1157, 1159 [2009], lv denied 13 NY3d 715 [2010]; Matter of Jessica YY., 258 AD2d 743, 747 [1999]; compare Matter of Amanda RR., 293 AD2d 779, 780 [2002]).
Petitioner also challenges Family Court's refusal to qualify the child's licensed mental health counselor as an expert witness. "Before admitting expert testimony, a court must determine whether a proposed expert possesses the requisite skill, training, education, knowledge and/or experience to qualify as an expert on the particular matter at issue in light of prevailing professional standards," and "[w]hether to admit the testimony of an expert witness is generally left to the trial court's discretion" (Matter of April WW. [Kimberly WW.], 133 AD3d 1113, 1115 [2015] [internal quotation marks, brackets, ellipsis and citations omitted]). Given this counselor's admitted lack of specific expertise in diagnosing child sexual abuse and her unfamiliarity with the professional standards and protocols pertaining to that field, we discern no basis to disturb Family Court's ruling (see Matter of Evelyn B., 37 AD3d 991, 993 [2007]).
Petitioner correctly notes that Family Court referred in its findings of fact to a custody evaluation report introduced for dispositional purposes only. However, Family Court's dismissal of the abuse and neglect petition was based [*4]upon and supported by ample evidence introduced for fact-finding purposes. Petitioner's remaining arguments with respect to Family Court's evidentiary rulings have been examined and lack merit.
Although petitioner does not squarely assert that the determination lacks a sound and substantial basis with respect to the abuse allegations, it bears noting that there were several deficiencies contaminating the interview where the child's purported disclosures were made. In its decision, Family Court reviewed and carefully analyzed that interview, informed by the expert opinions of the court-ordered forensic evaluator. The evaluator testified that there was no credible evidence that respondent had committed any sexual abuse against the child and opined that petitioner's caseworkers mishandled their interview of the child. She noted that petitioner's caseworkers repeatedly deviated from guidelines and best practices for child forensic interviews, including by failing to establish the child's ability to understand the importance of telling the truth and elicit a commitment from her to do so, involving two individuals in the interview, allowing their interview of the then-six-year-old child to go on for more than 2½ hours, far exceeding age-based duration recommendations, using anatomical dolls and diagrams in a suggestive manner, providing distracting toys in the interview room, interacting with the child in a manner that encouraged imagination and creativity rather than truth-telling, and failing to follow up on the child's description of implausible details related to allegations of sexual contact. The evaluator also observed that the child's description of the alleged conduct "morphed" over the course of the interview with petitioner's caseworkers, whose questioning the expert characterized as "unbelievabl[y] leading, coercive [and] close[d-]ended" and "egregious and unconscionable." The evaluator conducted her own interview, where the child initially made no allegation, then alleged that respondent touched her vagina while she was sleeping, and subsequently admitted that she had been lying.
For the reasons stated, we find that petitioner has failed to identify any basis upon which to disturb Family Court's dismissal (see Family Ct Act § 1046 [a] [vi]; Matter of Lee-Ann W. [James U.], 151 AD3d 1288, 1290, 1292-1293 [2017], lv denied 31 NY3d 908 [2018]; Matter of Leighann W. v Thomas X., 141 AD3d 876, 878 [2016]; Matter of Dezarae T. [Lee V.], 110 AD3d 1396, 1398 [2013]; Matter of Kayla J. [Michael J.], 74 AD3d 1665, 1668-1669 [2010]; Matter of Jared XX., 276 AD2d 980, 982-983 [2000]).
Egan Jr., Colangelo, Ceresia and Fisher, JJ., concur.
ORDERED that Tiffany O.'s appeal is dismissed, without costs.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Petitioner raises no arguments on appeal with respect to the dismissal of a violation petition that it also filed against respondent and has therefore abandoned any challenges with respect thereto (see Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d 1243, 1245 [2017]).

Footnote 2: Notably, the attorney for the child submitted a brief opposing petitioner's contentions and seeking affirmance of Family Court's determination.