■ In the Matter of Keara MM. and Another, Children Alleged to be Abused and/or Neglected. Clinton County Department of Social Services, Respondent; Naomi MM., Appellant. (And Another Related Proceeding.) [923 NYS2d 258]—

Spain, J. Appeal from an order of the Supreme Court (Lawliss, J.), entered March 19, 2010 in Clinton County, which granted petitioner's application, in two proceedings pursuant to Family Ct Act article 10, to adjudicate respondent's children to be abused and/or neglected.

Respondent (hereinafter the mother) and Stephen PP. (hereinafter the father) are the parents of two children, Keara MM. (born in 2008) and Stephen MM. (born in 2009). In the early morning hours of December 11, 2009, emergency medical personnel and police responded to a 911 call at the parents' home. Upon arrival, an emergency medical technician observed that Stephen's left arm appeared to be slightly deformed and that he had bruises over his left eye and on the back of his left leg. An emergency room examination revealed that six-week-old Stephen had numerous broken bones and fractures throughout his body.

Shortly thereafter, petitioner commenced these two proceedings in Family Court—one against the mother and one against the father—alleging that they had abused and neglected both children. The case was later transferred to the Integrated Domestic Violence Part of Supreme Court. On the first day of the fact-finding hearing, the mother appeared in a criminal action and pleaded guilty to one count of endangering the welfare of a child, admitting that, on December 11, 2009, she yanked Stephen's arm, causing it to break. The mother also pleaded guilty to filing a false statement, admitting that she gave a false written statement to the State Police regarding the circumstances surrounding Stephen's broken arm. Following the fact-finding hearing in the abuse/neglect proceedings, wherein the mother declined to testify, the court found that the mother had abused and neglected Stephen and had derivatively abused and neglected Keara. The court also found that the father had neglected both Stephen and Keara. The mother now appeals from the court's order of fact-finding.*

Contrary to the mother's assertion, there is ample support in the record for Family Court's findings that she abused and ne-

* The father initially appealed from both the fact-finding and dispositional orders. However, in December 2010, this Court granted the father's request to withdraw his appeal.

glected each of her children. In a Family Ct Act article 10 proceeding, the petitioner must prove abuse and/or neglect by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *Matter of Telsa Z. [Rickey Z.—Denise Z.]*, 71 AD3d 1246, 1249 [2010]). "An abused child is a child under the age of 18 'whose parent or other person legally responsible for [the child's] care (i) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ' " (*Matter of Brooke OO. [Lawrence OO.]*, 74 AD3d 1429, 1430 [2010], *lv denied* 15 NY3d 706 [2010], quoting Family Ct Act § 1012 [e] [i]). A prima facie case of abuse will be established on proof of an injury to a child that would not ordinarily occur absent "acts or omissions of the parent or other person responsible for the care of such child" (Family Ct Act § 1046 [a] [ii]; *see Matter of Philip M.*, 82 NY2d 238, 243 [1993]; *Matter of Jordan XX.*, 53 AD3d 740, 740 [2008]).

Here, petitioner made out a prima facie case of child abuse. Undisputed evidence showed that, at the time Stephen was taken to the emergency room, he had a fractured left upper arm and collar bone, fractures to bones in his upper and lower left leg, fractures to both bones in his right forearm near his wrist and six broken ribs. Medical expert testimony established that a child of Stephen's age could not injure himself, and the injuries were likely inflicted over the course of three or four separate events of trauma. The record also reflects that the mother and the father were Stephen's primary caregivers and that Stephen had lived with them continuously since birth, except for two periods of time before the incident where he had stayed with his paternal grandmother—who also testified. While there is also evidence in the record that the mother's parents and a friend lived in their home during the relevant time period, the record supports the conclusion that these individuals provided only limited care for Stephen and they had not caused Stephen's injuries. Indeed, the severe injuries suffered by Stephen, combined with his young age, sufficiently established that his injuries could not have occurred without an affirmative act of abuse on the part of at least one of his parents (*see* Family Ct Act § 1046 [a] [ii]; *see e.g. Matter of Chaquill R.*, 55 AD3d 975, 976 [2008], *lv denied* 11 NY3d 715 [2009]; *Matter of Ashley RR.*, 30 AD3d 699, 700 [2006]; *Matter of Tanajhia A.*, 283 AD2d 708, 708-709 [2001]; *Matter of Eric CC.*, 237 AD2d 655, 656 [1997]; *Matter of Austin JJ.*, 232 AD2d 736, 737 [1996]).

As petitioner established a prima facie case of child abuse, the

burden shifted to the mother to rebut this compelling evidence (*see Matter of Brooke OO. [Lawrence OO.]*, 74 AD3d at 1431; *Matter of Chaquill R.*, 55 AD3d at 976; *Matter of Ashley RR.*, 30 AD3d at 700). Not only had the mother admitted in criminal court to jerking and breaking Stephen's arm, but the explanations offered to others by her were either incredible or utterly implausible. Additionally, testimony from the father indicated that the mother admitted to him that she had "smacked" Stephen across the face a short time before the December 11, 2009 incident, and he also noticed bruises on Stephen's legs. The father denied causing any physical injuries to Stephen and further reported that the mother had been violent with him in the past and she had, on one occasion, forcefully thrown Keara onto their bed. In light of the foregoing, and according appropriate deference to Supreme Court's assessment of witness credibility, a preponderance of the record evidence exists to support the court's determination that these injuries were not accidental and that the mother abused and neglected Stephen and derivatively abused and neglected Keara.

Next, we reject the mother's assertion that—because her sentencing was pending in the criminal action—Supreme Court committed reversible error in drawing a negative inference against her for declining to testify at the fact-finding hearing. In failing to request an adjournment or otherwise raise this issue before the trial court, the mother did not preserve her right to raise it on appeal, and she appears to concede as much in her brief. While we are mindful of the impact of a pending criminal action on a respondent's decision whether to testify in a related abuse proceeding, there is a strong express policy in favor of expeditiously resolving abuse proceedings (*see* Family Ct Act § 1049; *Matter of Nicole H.*, 12 AD3d 182, 183 [2004]; *see also Matter of Emily I.*, 50 AD3d 1181, 1181 [2008], *lv denied* 10 NY3d 712 [2008]; *Matter of Diane H.*, 5 AD3d 770 [2004]). Moreover, the impact of the court's negative inference herein was minimal, at most, in light of the strong evidence against the mother in the record before us.

Finally, in view of the nature and severity of the abuse and neglect established with respect to Stephen, the findings of derivative abuse and neglect with respect to Keara were proper (*see* Family Ct Act § 1046 [a] [i]; *Matter of Marino S.*, 100 NY2d 361, 373-375 [2003], *cert denied* 540 US 1059 [2003]; *Matter of Dylan TT. [Kenneth UU.]*, 75 AD3d 783, 784 [2010]).

We have considered the mother's remaining contentions, including her unsupported constitutional argument, and find them unavailing.

Peters, J.P., Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.