Stein, J.
Appeal from an order of the Family Court of St. Lawrence County (Potter, J.), entered May 17, 2010, which granted petitioner’s applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be severely abused, abused and neglected.
At the beginning of the relevant events, respondent resided with his paramour, Natasha S., and five children: three of Natasha’s children from previous relationships, Carolina S., Nicholas S. and Damian X. (born in 2001, 2003 and 2006, respectively); the couple’s biological child, Ryan T. (born in 2008); and Craig T. (born in 2006), respondent’s son from a previous marriage, who lived in the household during alternating months. In December 2008, while visiting relatives, Nicholas was discovered to have bruising on his buttocks and the police and petitioner were contacted. After Nicholas related that the bruising had been caused by respondent and Natasha spanking him with kitchen implements, he was removed from *1308 respondent’s home and placed with a relative. Thereafter, petitioner commenced the first of these proceedings against respondent, alleging that Nicholas was neglected and that Carolina was derivatively neglected.[1]
Subsequently, when Craig returned to his mother’s home following a stay with respondent, he was discovered to have second-degree burn marks on his back, abdomen and chest, various bruises on his face and a healing fracture of his left humerus. As a result, petitioner commenced a second proceeding against respondent, alleging, among other things, that Nicholas and Carolina were derivatively neglected and abused.[2] Following a fact-finding hearing with respect to both petitions— during which Family Court denied respondent’s motion to dismiss the petitions at the close of petitioner’s proof — the court found, as relevant here, that Nicholas was a neglected child and that Carolina was derivatively neglected, based upon the fact that, on at least two occasions, respondent struck or allowed Nicholas to be struck with instruments that caused severe bruising to his buttocks. The court further found, by clear and convincing evidence, that Craig was abused and severely abused by virtue of the burns and broken arm, and that respondent and Natasha were responsible. Accordingly, Family Court found that Carolina and Nicholas were at risk of similar harm and, therefore, were derivatively abused and severely abused. The court’s decision was reduced to a written order, from which respondent now appeals.
Contrary to respondent’s contention, we find that the record amply supports Family Court’s findings that Nicholas was neglected, and that Carolina was thereby derivatively neglected, and, further, that Nicholas and Carolina were derivatively abused based upon the abuse of Craig. Addressing first the finding of neglect, a neglected child is one, as relevant here, “whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of. . . the infliction of excessive corporal punishment” (Family Ct Act § 1012 [f] [i] [B]; see Matter of Benjamin VV. [Larry VV.], 92 AD3d 1107, 1108 [2012]; Matter of Bianca QQ. [Kiyonna SS.], 75 AD3d 679, 680-681 [2010]). At the fact-finding hearing, a detective with the sheriffs department, three different case *1309 workers for petitioner, Nicholas’ aunt, a child advocate for the school system and the school nurse all testified that Nicholas told them that respondent had spanked him with kitchen implements. In addition, a caseworker, the aunt and the school nurse all testified to seeing the bruising on Nicholas’ buttocks resulting from the spankings, and photographs of the injuries were entered into evidence. A caseworker also testified that Damian related that respondent had spanked him with a spatula.
In our view, there was sufficient evidence to corroborate the out-of-court statements made by Nicholas which were relied upon by Family Court (see Matter of Branden P. [Corey P.], 90 AD3d 1186, 1188-1189 [2011]; Matter of Justin CC. [Tina CC.], 77 AD3d 1056, 1057-1058 [2010], lv denied 16 NY3d 702 [2011]) and, therefore, respondent’s neglect with respect to Nicholas was established by a preponderance of the evidence (see Matter of Loraida R. [Lori S.], 97 AD3d 925, 926 [2012]; Matter of Kayden E. [Luis E.], 88 AD3d 1205, 1206-1207 [2011], lv denied 18 NY3d 803 [2012]). Furthermore, a finding of derivative neglect as to Carolina was appropriate inasmuch as respondent’s repeated excessive corporal punishment of Nicholas “demonstrate [d] such an impaired level of . . . judgment as to create a substantial risk of harm for any child in [his] care” (Matter of Ramsey H. [Benjamin K], 99 AD3d 1040, 1042 [2012], lv denied 20 NY3d 858 [2013] [internal quotation marks and citations omitted]; see Matter of Justin CC. [Tina CC.], 77 AD3d at 1058).
Turning to the allegations of abuse, as relevant here, a child is abused when a parent or other person legally responsible for his or her care “inflicts or allows to be inflicted upon such child physical injury by other them accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health” (Family Ct Act § 1012 [e] [i]; see Matter of Keara MM. [Naomi MM.], 84 AD3d 1442,1443 [2011]; Matter of Brooke OO. [Lawrence OO.], 74 AD3d 1429, 1430 [2010], lv denied 15 NY3d 706 [2010]). Significantly, “[a] prima facie case of abuse will be established on proof of an injury to a child that would not ordinarily occur absent ‘acts or omissions of the parent or other person responsible for the care of such child’ ” (Matter of Keara MM. [Naomi MM.], 84 AD3d at 1443, quoting Family Ct Act § 1046 [a] [ii]).
Here, shortly after he was returned to his mother, Craig was examined by Marita Lind, a pediatrician specializing in child abuse, who observed a significant, extensive pattern of healing burns located on his back, buttocks, abdomen and the backs of both hands and lower arms. Lind opined that the burns, some *1310 of which were second degree, were not consistent with accidental contact and were indicative of the child being pushed or pressed against a hot solid object. She testified that there was no sign of medical treatment of the burns and that they would likely result in permanent scarring over a large surface of the child’s body. Lind also diagnosed Craig with a healing fracture of the distal humerus of his left arm, sustained a few weeks prior to her examination and for which no medical treatment had been sought, and noted that Craig could not straighten his arm completely and expressed pain during palpation. Finally, Lind noted bruising on the child’s eyelids, ears and face that were not consistent with normal childhood activities and were indicative of maltreatment.
Based upon this testimony, petitioner made out its prima facie case of child abuse by demonstrating that respondent either inflicted the requisite physical injury upon Craig directly, or allowed him to remain in the unsupervised care of Natasha, and failed to seek medical treatment for the child’s injuries, the necessity of which should have been apparent. Thus, the burden “shifted to respondent to rebut the presumption of culpability by offering a reasonable and adequate explanation” for the injuries and his failure to seek medical treatment (Matter of Izayah J. [Jose I.], 104 AD3d 1107, 1109 [2013]; see Matter of Keara MM. [Naomi MM.], 84 AD3d at 1443-1444; Matter of Chaquill R., 55 AD3d 975, 976 [2008], lv denied 11 NY3d 715 [2009]). Respondent failed to do so here, as he simply asserted that the burning and bruising injuries occurred accidentally and claimed no knowledge of Craig’s broken arm. Furthermore, while respondent claimed that he did not seek medical care for Craig’s burns because he believed that the treatment provided by Natasha was sufficient, Lind testified that — in addition to the need to seek treatment to address the significant risk of infection — the level of discomfort and pain that would have been experienced by the child would have been reason alone for any reasonable caretaker to seek medical treatment. In light of the foregoing, and deferring to the credibility assessments made by Family Court, we find that a preponderance of the evidence supports its determination that respondent abused Craig and, consequently, that Nicholas and Carolina were derivatively abused (see Matter of Izayah J. [Jose I.], 104 AD3d at 1108-1109; Matter of Ramsey H. [Benjamin K.], 99 AD3d at 1042; Matter of Kayden E. [Luis E.], 88 AD3d at 1206-1207; Matter of Keara MM. [Naomi MM.], 84 AD3d at 1444; Matter of Chaquill R., 55 AD3d at 977).
However, we agree with respondent that Family Court erred
*1311 in concluding that Nicholas and Carolina were derivatively severely abused by respondent. As the Court of Appeals recently clarified in Matter of Dashawn W. (Antoine N.) (21 NY3d 36 [2013]), a determination of severe abuse requires that the court find, by clear and convincing evidence, as relevant here, not only that “the child [is] an abused child as a result of reckless or intentional acts of the parent committed under circumstances evincing a depraved indifference to human life, which result in serious physical injury to the child as defined in [Penal Law § 10.00 (10)]” (Social Services Law § 384-b [8] [a] [i]), but also that petitioner “made diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interests of the child, and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future” (Social Services Law § 384-b [8] [a] [iv]). Here, inasmuch as Family Court did not make either of the foregoing determinations and the evidence in the record does not enable us to do so, a finding of severe abuse against respondent cannot be sustained.[3]
We have examined respondent’s remaining arguments and have found them to be without merit.
Peters, P.J., Rose and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as found the subject children to be severely abused, and, as so modified, affirmed.

. Separate proceedings were commenced against Natasha for the alleged neglect and abuse, which are not at issue in this appeal.

. On the face of the petition, two boxes were checked — one for “Child Abuse” and the other for “Severe Abuse.” We note that, pursuant to Family Ct Act § 1051 (e), the court may make a finding of severe abuse coincident with a finding of abuse under certain circumstances.

. We also note that, insofar as a finding of severe abuse requires acts committed by a parent and an inquiry into whether diligent efforts were or should have been made to strengthen and encourage the parental relationship (see Social Services Law § 384-b [8] [a]), it is undisputed that respondent is not the biological parent of Nicholas or Carolina. Indeed, there is no evidence that any legal relationship existed between him and those children at the time of the alleged acts of abuse.